**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MACHELLE D. KAUL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 10-0231-CG-C** |
| | ) | |
| **BRETT ROBINSON GULF** | ) | |
| **CORPORATION, et. al.,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |

## ORDER

This matter comes before the court on three motions for summary judgment filed by defendant Brett Robinson Gulf Corporation ("BRGC") (Docs. 48, 61 and 66). For the reasons set forth below, the motions are due to be **GRANTED.**

### Procedural Background

On May 4, 2010, the plaintiff Machelle D. Kaul brought this lawsuit against BRGC, Larry Stricklin, and Lee Smith, claiming that she was subject to discrimination, retaliation, harassment, wrongful demotion and termination due to her sex, national origin and religion. (Doc. 1). On August 31, 2010, this court dismissed the claims against Larry Stricklin and Lee Smith with prejudice. (Doc. 28). On November 4, 2010, this court granted BRGC's motion for partial summary judgment on plaintiff's claim of religious discrimination. (Doc. 45). Presently before the court are:

(1)     BRGC's motion for summary judgment on plaintiff's Family and Medical Leave Act claim  (Doc. 48);

(2)     BRGC's motion for partial summary judgment on plaintiff's national origin discrimination claim (Doc. 61); and

(3)     BRGC's motion for summary judgment on plaintiff's harassment, discrimination and retaliation claims (Doc. 66).

(4)     BRGC's motion to strike unsworn statement (Doc. 71).

The motions have been fully briefed by the parties and are ripe for disposition.[1]

## Facts

BRGC is a vacation rental and sales company which operates high-rise condominiums located along the beach in Gulf Shores and Orange Beach, Alabama. On April 25, 2007, plaintiff was hired by BRGC as a security officer.  During the time period relevant to this matter,  Larry Stricklin was the chief of BRGC's security services department.  Lee Smith was second-in-command as the assistant director of security services.  The security officers in each of the three eight-hour shifts, day, evening, and night, were supervised by a shift supervisor and an assistant supervisor.

---

[1] Plaintiff is proceeding pro se in this matter, but was advised of the need to present evidence in response to BRGC's motions for summary judgment in accordance with <u>McBride v. Sharpe,</u> 25 F.3d 962, 968 (11th Cir. 1994)(en banc) cert. denied, 513 U.S. 990 (1994).  (Docs. 35, 50, 64 and 68).  Plaintiff has filed responses to Documents 48 and 66, but has submitted no affidavits or other evidence which the court can consider in determining the motions for summary judgment.

When she was initially hired, plaintiff was assigned to the day or first shift which ran from 6:00 a.m. to 2:00 p.m.  In May 2007, Stricklin promoted plaintiff to fill a vacant assistant shift supervisor  position on the evening or second shift, which ran from 2:00 p.m. to 10:00 p.m.   After her promotion, plaintiff's direct supervisor was  Jeremy Smith, the evening shift supervisor.  As an assistant supervisor, plaintiff supervised the security officers on her shift and was in charge of the evening shift on Saturdays and Sundays when  Jeremy Smith was off work.

Roger Wynn was a security officer assigned to the evening shift.[2]  Part of plaintiff's job when she was in charge of that shift involved going to Wynn's work location and checking on him.  On several occasions in October 2007, Wynn engaged in conduct plaintiff believed constituted sexual harassment in violation of the BRGC's written policy.[3]

---

[2] During her deposition, plaintiff originally identified Wynn as Wiggins, but later corrected herself (Doc. 66-2, p. 36).

[3] During her deposition, plaintiff described the alleged offensive conduct as follows:

He started saying some really off-the-wall things, saying that we were having conversations that never occurred. He said that I told him that he could put his hand up my skirt and that I told him that he could kiss me. And I told him that that conversation never would happen. I said, I'm your supervisor. This is   uncalled for.

* * *

[O]ne day I went in to Phoenix VI (a Brett Robinson condominium building) to check on him when I was supervising and he started taking pictures of me with a camera he had brought in.

One day I was talking to the girl at the front desk. After I had told him not to continue to make these comments and that he needed to speak to me in a professional manner only, and he started stroking -- I had my hand on the desk and he started stroking my finger, and I pulled it away.

(Continued)

On October 29, 2007, plaintiff reported Wynn's conduct to Jeremy Smith, who told her to prepare a written statement. She did so, and signed it on November 1, 2007. According to this written statement, Wynn's conduct "[s]tart[ed] around the middle of Oct[ober]," and identifies harassing incidents on four days – October 19, 20, 26, and 28. Also on November 1, 2007, plaintiff's statement was provided to Stricklin. Finally on November 1, Stricklin interviewed plaintiff and Wynn, and fired Wynn.

After the incidents with Wynn, plaintiff began to receive disciplinary reports which eventually culminated in her termination. On November 28, 2007, Jeremy Smith issued plaintiff a written minor infraction report for wearing her uniform coat while in civilian clothes. Plaintiff had previously been warned not to do this. During her deposition, plaintiff admitted to doing this and that she had been previously advised against it. Additionally, plaintiff could not identify another assistant supervisor who had disobeyed this directive.

Jeremy Smith also issued plaintiff a second minor infraction report on December 11, 2007. This report was for failing to conduct a telephonic roll call of the security officers on her shift. Plaintiff admitted that she failed to do this on

---

* * *

There was a time he told me that his -- he showed me a picture of his niece and her family and told me that she had posed for Playboy.
* * *
[T]here was one time -- yes, he did ask me out. And there was one time in particular that he said, well, she won't go out with me unless I don't work here, so I guess I'll have to quit my job.

(Doc. 66-2, pp. 28-33).

December 10.  Plaintiff also could not identify another assistant supervisor who had failed to conduct a roll call.[4]  Also on December 11, 2007, Jeremy Smith issued plaintiff a separate minor infraction report for failing to have adequate security officer coverage at a condominium building within her area of responsibility.  As noted on the report, Jeremy Smith learned on December 11 that she had failed to carry out this duty on December 10.  Again, plaintiff admitted during her deposition that she had allowed an officer to leave early, thereby losing coverage at that building, and that she could not identify another assistant shift supervisor who had left a building uncovered and who was not disciplined.

On January 8, 2008, Jeremy Smith issued an employee warning notice to plaintiff regarding the misuse of her company-provided cell phone.  Cell phone records showed that plaintiff was making lengthy calls while she was off duty to officers who were on duty.  At her deposition, plaintiff admitted that she had used the company cell phone several times to call her boyfriend, Anthony Rao, a BRGC security officer, when she was off duty and he was on duty, and that their discussions, at times, were quite lengthy.  She also could not point to any other assistant shift supervisor who had so many lengthy calls on the company cell phone.

On January 21, 2008, Stricklin met with plaintiff and her supervisor, Jeremy Smith, to discuss plaintiff's performance, as well as additional lapses in supervisory judgment or poor job performance Stricklin thought should be addressed.  As

---

[4] Plaintiff claimed that Jeremy Smith, her shift supervisor, had similarly failed to conduct a roll call a week before her, but admitted she had no idea whether he was disciplined.

plaintiff recalled the meeting, Stricklin told her that "[h]e felt that [she] was not making wise supervisor decisions." One of the additional issues involved plaintiff's decision to wear jeans at a leadership training class earlier in the month. Stricklin had instructed the security department that they were not permitted to wear jeans to this training. On January 22, 2008, Jeremy Smith gave plaintiff a written counseling memorandum drafted by Stricklin relating to this issue. Plaintiff admitted that the facts stated in the counseling memorandum were true and that she was the only person from the security department wearing jeans to the leadership class.

Another incident discussed at the January 21st meeting involved a notice to Stricklin regarding an incident report. During a security patrol, plaintiff came across an unlocked door at the company's laundry facility. Plaintiff initially failed to complete a written report on this incident as required by BRGC policy. She was instructed by Lee Smith, the assistant chief of security services, to complete an incident report. When she did so, the report was not correctly completed. During her deposition, plaintiff admitted she had discovered an unlocked door at the company's laundry but had not prepared an incident report simply because she believed it was unnecessary. Plaintiff also had admitted that her job duties included the completion of an incident report for occurrences such as an unlocked door. Plaintiff admitted that she did not know of another assistant shift supervisor who had similarly failed to timely and accurately complete an incident report.

Stricklin has not had occasion to discipline any other assistant shift supervisor for this type of conduct.

Another example of what Stricklin viewed as plaintiff's poor judgment discussed during the January 21st meeting related to her failure to appear for at least two supervisors meetings, which were held at 6:00 a.m. After she missed the first meeting, plaintiff told Stricklin that she had a doctor's appointment. Thereafter, plaintiff missed a second meeting, and failed to give Stricklin any warning or notice. During her deposition, plaintiff claimed she had given advance notice to Jeremy Smith, but was unable to provide any evidence to show that the notice was passed on to Stricklin. Stricklin has stated in his declaration that he was not advised in advance of plaintiff's absence. Plaintiff alleged that one other assistant shift supervisor had missed supervisors meetings without any consequences. According to Stricklin, this other employee did have advance permission to miss meetings.

After the January 21st meeting, Stricklin notified plaintiff that he was placing her on a period of probation for 90 days, and that she was to be closely supervised by Jeremy Smith. Plaintiff was unable to identify any assistant shift supervisor with a similar discipline history who was not placed on probation. In fact, plaintiff could not identify an assistant shift supervisor with a similar discipline history.

During the next several weeks, Jeremy Smith kept Stricklin informed about his closer supervision of plaintiff and his impression that she was not improving or

attempting to improve her performance as a supervisor.  As a result, on February 15, 2008, Stricklin demoted plaintiff to security officer and moved her to the day shift under the supervision of Carol Wilson, day shift supervisor.  Stricklin stated in his declaration that he has terminated and demoted assistant shift supervisors based on reports of poor judgment and poor decision-making from their direct supervisors.  Stricklin claims to have made his demotion decision in essentially the same fashion as his promotion decision a few months earlier by relying on reports from plaintiff's supervisor. Plaintiff was transferred to the day shift because there was a need for a security officer on that shift.  Plaintiff could not identify any assistant shift supervisor who had engaged in conduct similar to that admitted to by plaintiff and placed on probation who was not demoted after the employee's supervisor provided negative opinions about the progress during the probation.

After the demotion and transfer, Wilson kept Stricklin informed regarding plaintiff's performance.  According to Wilson and reported to Stricklin, plaintiff exhibited several performance problems.  For one, plaintiff's uniforms and appearance were at times dirty and not acceptable, and on one occasion she discovered plaintiff at her gate house duty station with her shoes off and her feet propped up.  According to Wilson, plaintiff  failed to enforce security rules against bike riding and skateboarding on company-owned or company-managed property, and failed to enforce or follow up on enforcement of rules requiring guests to wear wrist bands in the pool areas.  She also discussed personal issues with guests and other employees to an extent Wilson considered unprofessional and inappropriate.

Finally, plaintiff failed to completely or thoroughly complete activity reports for the shift. In April 2008, Wilson prepared a performance appraisal of plaintiff listing her various concerns and provided it to Stricklin for review. The performance appraisal was never delivered to plaintiff because, a day or so after receiving it, Stricklin decided to fire her.

The final incident involving plaintiff concerned beach cleanup. BRGC required employees to spend an hour every Wednesday morning cleaning trash from the beach. The company had a telephone call system which would call employees to remind them to clean the beach between 8:00 a.m. to 9:00 a.m. On the morning of April 16, 2008, a few minutes after 8:00 a.m., Stricklin and Lee Smith went to the beach area near buildings which were part of plaintiff's duty station. When they arrived, Stricklin saw some trash on the beach but no officer on the beach cleaning. Stricklin instructed Lee Smith to contact Wilson in order to locate plaintiff . When contacted, plaintiff explained she had already been to the beach and cleaned up what she had seen. Plaintiff was ordered to come out to the beach and perform the cleanup work. Plaintiff did so. Stricklin instructed Lee Smith to document these events, which he did. Wilson believed plaintiff was lying to her about performing her cleanup earlier in an attempt to excuse her failure to perform her job. Wilson also believed that, even if she had performed some beach cleaning earlier, plaintiff was not following orders about the assigned time for this job and had not done a good job because from what she understood from Lee Smith there was still trash on the beach. Stricklin decided to discharge plaintiff the day of the beach cleanup. Not

following orders or lying to supervisors were both reasons for discipline under BRGC's policies. Plaintiff does not know of any other security officer who Stricklin believed had lied about or misrepresented the facts about performing the beach cleaning or any other duty.

## Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B

Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rely merely on allegations or denials in [the non-moving party's] pleading; rather, its response .... must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e). "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

## National Origin Discrimination

In her complaint, plaintiff checked the blocks indicating she accused BRGC of discriminating against her on the basis of her religion, sex and national origin. (Doc. 1, p. 2). This court has already granted summary judgment in favor of BRGC on plaintiff's religious discrimination claim because such a claim was not part of plaintiff's EEOC charge. (Doc. 45). As noted in that prior order, filing an administrative claim of discrimination with the EEOC is a condition precedent to filing suit in this court under Title VII. Maynard v. Pneumatic Products Corp., 256 F.3d 1259, 1262 (11th Cir. 2001)(citing 42 U.S.C. § 2000e-5(e)). "A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec. Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994)(citing Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970)).

The court has reviewed the plaintiff's EEOC charge, as well as the correspondence from the EEOC submitted by BRGC. The court finds that plaintiff did not exhaust her administrative remedies by raising a national origin discrimination claim before the EEOC. The scope of the investigation which could be reasonably expected to grow out of the plaintiff's discrimination charge, and did in fact grow out of that charge did not include a national origin discrimination claim. So for the reasons set forth in this court's prior order (Doc. 45), BRGC is entitled to summary judgment on plaintiff's national origin discrimination claim.

# Family and Medical Leave Act Claim

Plaintiff's complaint contains the following allegations that bear on this claim:

> In Dec. of 2007, my mother was diagnosed with stage four lung cancer, terminal, and was given six months to live.
>
> …
>
> In Feb. of 2008 I was demoted back to officer, and put on first shift, I asked if I could work 2nd or 3rd shift so that I could be there for my Mother during the day while she was awake. Larry [Stricklin] said, "no, first shift or nothing at all. So I worked the first shift and put in another request for 2nd or 3rd shift in March of 2008. By this time my Mother was deteriorating very fast …. Larry [Stricklin] again said, no, first shift or nothing at all. This was a violation of the family medical leave act unable to work with me on my schedule to be there for my mother.

The Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.* ("FMLA") grants eligible employees certain substantive rights including the right to 12 weeks of leave in a 12-month period in order to care for a parent who has a serious health condition. 29 U.S.C. §2612(a)(1). Employee rights established by FMLA are enforced in part by 29 U.S.C. §2615 which states in pertinent part:

(a) Interference with rights

> (1) Exercise of rights
>
> It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.
>
> (2) Discrimination
>
> It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

Courts have noted that the FMLA thus creates two types of claims: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, see 29 U.S.C. § 2615(a)(1); and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, see 29 U.S.C. § 2615(a)(1) & (2). <u>Strickland v Water Works,</u> 239 F.3d 1199, 1207 (11th Cir. 2001). To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to the benefit denied. <u>Id.</u> at 1206-1207 (citations omitted). In contrast, to succeed on a retaliation claim, an employee must demonstrate that his employer intentionally discriminated against him in the form of an adverse employment action for having exercised an FMLA right. <u>Id.</u> at 1207. "In other words, a plaintiff bringing a retaliation claim faces the increased burden of showing that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus." <u>Id.</u> (internal quotations omitted).

The court construes plaintiff's complaint as seeking to make an FMLA interference claim. Plaintiff essentially says that she was entitled to switch to the second or third shift at work, that she requested such a change, and that her request was denied. For purposes of resolving the motion, the court assumes, without deciding, that the accommodation plaintiff requested comes under the purview of the FMLA.

Based on the undisputed facts of record in this matter, the court finds that, at the time of her request, plaintiff was not entitled to any benefits under the FMLA because she was not an eligible employee as defined by that law. The leave entitlements of the FMLA apply to "eligible employees." 29 U.S.C. §2612(a). An eligible employee is defined as an employee who has been employed for at least 12 months and 1250 hours. 29 U.S.C. §2611(2)(a). By her own admission, plaintiff was terminated by BRGC before she had been employed for 12 months. In her complaint, plaintiff lists her employment dates as April 25, 2007, to April 14, 2008. (Doc. 1 p. 2). In her deposition, she testified that she was discharged on April 16, 2008, and that she had not been employed for one year at that time. (Doc. 48-1 p. 10-11). The specific incidents she complains of, BRGC's refusal to place her on the second or third shift, are alleged to have occurred in February and March of 2008. She was, therefore, outside of the protection of the FMLA. BRGC is, accordingly, entitled to summary judgment of this claim.[5]

## Sexual Harassment

BRGC moves for summary judgment on plaintiff's claim for sexual harassment. While sexual harassment claims involve fact intensive issues, motions

---

[5] The court takes note that, in her response to the summary judgment motion, plaintiff asserts that the FMLA claim is actually based on her desire for the accommodation in working shift to be effective after her one year employment anniversary. The court need not address this issue because there is no factual support in the record for it. See Scarboro v. Universal C. I. T. Credit Corp., 364 F.2d 10 (5th Cir. 1966) (On motion for summary judgment, an adverse party may not rest upon mere allegations of his pleading; he must by affidavits or other evidentiary matter set forth specific facts showing that there is a genuine issue for trial).

for summary judgment are appropriate to police the baseline for such claims. Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999) (en banc). Sexual harassment can constitute discrimination based on sex for purposes of Title VII. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501 (11th Cir. 2000). Actionable sexual harassment occurs when inappropriate sexual conduct causes a hostile work environment that is sufficiently severe or pervasive to alter the terms and conditions of work. Hulsey v. Pride Rests., LLC, 367 F.3d 1238, 1245 (11th Cir. 2004). Under Title VII, to support a hostile work environment claim against an employer, a plaintiff must establish that: (1) she belongs to a protected group; (2) she has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors or other conduct of a sexual nature; (3) the harassment was based on the sex of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create an abusive working environment; and (5) a basis for holding the employer liable. Mendoza, 195 F.3d at 1245.

BRGC argues that there is no basis for holding it liable for the conduct of Wynn. Where, as here, the perpetrator of the harassment is a co-employee of the victim, rather than a supervisor, the employer will be held directly liable only if it knew or should have known of the harassing conduct, but failed to take prompt remedial action. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). There is no dispute in this case that plaintiff reported Wynn's unwanted advances to her supervisor, Jeremy Smith, on October 29, 2007. There has been no

evidence presented that indicates any earlier notification. Plaintiff does not argue, and the evidence does not support a conclusion, that BRGC should have known of Wynn's conduct prior to plaintiff's report. Plaintiff was requested to put her complaint in writing, which she did on November 1, 2007. The written report was provided to Larry Strickland, head of security for BRGC, who fired Wynn that very same day. This court finds, as a matter of law, that BRGC took prompt remedial action in response to plaintiff's complaint. See Lewis v. U.S. Dept. of Labor 368 Fed. Appx. 20 (11th Cir. 2010) (prompt remedial action taken where employer immediately initiated investigation and in response counseled offending employee); Blackmon v. Wal-Mart Stores East, L.P., 358 Fed. Appx. 101 (11th Cir. 2009) (termination of offending employee within two weeks of harassment incident was prompt remedial action). Because of BRGC's prompt remedial action in investigating plaintiff's complaint and firing Wynn, summary judgment is appropriate on the sexual harassment count.[6]

### Retaliation

BRGC argues first that plaintiff has failed to make out a prima facie case of retaliation. In order to make out such a case, a plaintiff must show that (1) she engaged in activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two

---

[6] BRGC also argues that the conduct of Roger Wynn, as described above, was insufficiently severe or pervasive to alter the terms and conditions of plaintiff's employment. The court need not address this issue because it has found there is no basis for employer liability in this case.

events.  Crawford v Carroll, 529 F.3d 961, 970 (11th Cir. 2008);  Johnson, 234 F.3d

at 507;  Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir. 1997).   Once a prima facie

case is established, the employer must proffer a legitimate, non-retaliatory reason

for the adverse employment action.   Olmsted v. Taco Bell Corp., 141 F.3d 1457,

1460 (11th Cir. 1998).  The plaintiff then bears the ultimate burden of proving by a

preponderance of the evidence that the reason provided by the employer is a pretext

for prohibited, retaliatory conduct.  Id.

        There is no question that by complaining to her superiors regarding Wynn's

conduct in October 2007 and subsequently filing an EEOC discrimination charge,

plaintiff engaged in statutorily protected activity.  There is also no dispute that

after October, plaintiff began to receive minor infraction reports and other

disciplinary actions that led to her placement on extended probation in January

2008, her demotion from sergeant to officer in February 2008,  and ultimately her

termination in April 2008.  Plaintiff received her first minor infraction report within

a month of her complaint about Wynn.  Under the standard set forth by the

Supreme Court in Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53,

57 (2006), these disciplinary actions would have been materially adverse to a

reasonable employee in plaintiff's position as they were used to place plaintiff on

probation, demote and finally fire her.  Also, construing the causal element broadly,

the court finds that there is a sufficient temporal proximity between her complaint

and the disciplinary actions to support finding of a causal relationship between the

events.  Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004) (a close temporal

proximity between the protected activity and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case); Donnellon v. Fruehauf Corp., 794 F.2d 598, 601 (11th Cir. 1986) ("The short period of time [one month] between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation"). Plaintiff has, therefore, made out a proper prima facie case of retaliation.

Because BRGC has articulated legitimate, nondiscriminatory reasons for plaintiff's demotion and termination, the burden shifts back to plaintiff to produce sufficient evidence to raise a genuine issue of material fact with regard to whether BRGC's proffered reasons for her demotion and termination were pretextual. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103-04 (11th Cir. 2001). In order to show pretext, plaintiff must "demonstrate that the proffered reason was not the true reason for the [employment] decision.... [Plaintiff] may [succeed in this] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). "[A] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." Howard v. BP Oil Co., 32 F.3d 520, 526 (11th Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993)). In evaluating a summary judgment motion, "[t]he district court must evaluate whether the

plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal quotations and citations omitted).

In this case, plaintiff has produced no evidence to rebut BRGC's proffered reasons for any disciplinary action taken against her. The evidence that has been placed on the record indicates that there is support for each disciplinary action taken by BRGC. Plaintiff has admitted to the conduct underlying each occasion on which she received written or verbal discipline. Plaintiff has not identified any BRGC security department employee who engaged in the same conduct and who was treated in a more lenient fashion. Plaintiff, in short, has failed to give the court any reason to question the disciplinary actions taken by BRGC. As plaintiff has failed to raise a question of fact as to pretext, BRGC is entitled to summary judgment on plaintiff's retaliation claim.

## Sex Discrimination

Plaintiff's final claim is for sex discrimination. In moving for summary judgment, BRGC argues that plaintiff has failed to make out a prima facie case of sex discrimination. A prima facie case of discrimination may be established through circumstantial evidence by proving that (1) she belongs to a protected class; (2) she was subjected to adverse employment action; (3) she was qualified to do the job; and (4) her employer treated similarly situated employees outside her

classification more favorably.  <u>Crawford,</u> 529 F.3d at 970; <u>Wilson v. B/E Aerospace,</u> <u>Inc.,</u> 376 F.3d 1079, 1091 (11th Cir. 2004) (citations omitted).  "The plaintiff and the employee she identifies as a comparator must be similarly situated in all relevant respects" in order to "prevent courts from second-guessing a reasonable decision by the employer."  <u>Wilson,</u> 376 F. 3d at 1091 (citations and internal quotations omitted).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present."  <u>Id.</u> at 1092 (citations omitted).

BRGC acknowledges that plaintiff meets the first three elements listed above, but argues that she has not, and cannot, satisfy the fourth element.[7]  The court agrees and finds that plaintiff has produced no evidence identifying similarly situated male employees, much less any such employees who were treated more favorably than plaintiff.  In her deposition, plaintiff admits to the conduct that led to her disciplinary reports, her probation and her termination.  When asked, during her deposition, to identify similarly situated male employees who were treated differently from her, she admits that she cannot.  Again, in response to BRGC's summary judgment motion, she had another opportunity to identify such

---

[7] Plaintiff is not clear about what actions of BRGC she considers sexually discriminatory, but the court will presume that plaintiff intended to include all disciplinary actions, her demotion in February 2008, and her termination in April 2008.

employees, but failed to do so.[8]  Accordingly, plaintiff has failed to make out a prima facie case of sexual discrimination.

The court further finds that even were it to find that a prima facie case of sexual discrimination had been made out, BRGC has put forward evidence showing legitimate, nondiscriminatory reasons for each of its disciplinary actions against plaintiff.  As mentioned before, plaintiff admitted to the conduct which led to each of these actions.  Plaintiff, therefore, had the burden of establishing that BRGC's proffered reasons for its actions were pretextual.  If the proffered reasons given by an employer are ones that might motivate a reasonable employer, a plaintiff cannot recast the reason, but must meet it head on and rebut it.  Wilson, 376 F.3d at 1088.  Merely quarreling with those reasons is not enough.  Id.  A court in Title VII action is not in the business of adjudging whether employment decisions are prudent or fair.  Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002).  Instead, a court's sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.  Id.  In this case, plaintiff has submitted no evidence, and the record otherwise contains no evidence, which would support a claim of discrimination.  Summary judgment is therefore warranted.

---

[8] Indeed, although plaintiff stated during her deposition that she "could subpoena other people's work files and find out that [Stricklin] treats certain people differently . . . ," she provides no evidence from any other employee's file to support her claims of discrimination.

**CONCLUSION**

After due consideration of all matters presented and for the reasons set forth herein, it is **ORDERED** that BRGC's motions for summary judgment (Docs. 48, 61 and 66) are hereby **GRANTED**. BRGC's motion to strike unsworn statement (Doc. 71) is **DENIED AS MOOT.**

**DONE** and **ORDERED** this 3rd day of May, 2011.

/s/  Callie V. S. Granade
UNITED STATES DISTRICT JUDGE